United States Bankruptcy Court
Northern District of Illinois
Eastern Division

In re:

Faye T. Pantazelos

Debtor.

Bankruptcy No. 15-bk-8916

Chapter 13

## MEMORANDUM OPINION ON TRUSTEE'S MOTION TO DISMISS FOR INELIGIBILITY

Faye T. Pantazelos ("Debtor") filed her petition seeking bankruptcy relief under Chapter 13 on March 13, 2015. Debtor's original Schedule F scheduled unsecured debts of $404,888.22, but was later amended to include a total unsecured debt of $291,561.11. Schedule F listed a "[p]otential claim from the closure of New Century Bank; covered by Director/Officer Liability insurance" of the Federal Deposit Insurance Corporation ("FDIC") for an "unknown" amount, which was marked as unliquidated, disputed and contingent (Dkt. 74).

Section 109(e) of the Bankruptcy Code provides that a debtor is not eligible to file a Chapter 13 case if, on the date of the petition, that individual's noncontingent, liquidated, unsecured debt exceeds $383,175. U.S.C.S. § 109(e). The Chapter 13 trustee, Tom Vaughn, ("Trustee") moved to dismiss Debtor's bankruptcy petition for ineligibility, arguing that Debtor's scheduled debts were above the § 109(e) debt limit. Debtor maintains that the FDIC debt is contingent and unliquidated and therefore, should not be included in her total debt calculation. The matter was fully briefed by the parties.[1]

This opinion concludes that the debt attributed to the FDIC is noncontingent but unliquidated, and therefore Debtor is not over the debt limit, and is eligible for relief under Chapter 13. The Trustee's Motion to Dismiss is denied by separate order.

---

[1] The Trustee declined to file a reply brief.

## DISCUSSION

### JURISDICTION

Jurisdiction over a Motion to Dismiss the bankruptcy case is provided by 28 U.S.C. § 1334. The matter is referred here by Internal Procedure 15(a) of the District Court for the Northern District of Illinois. This contested motion arises under § 109(e) and § 1322(b)(2) of the Bankruptcy Code, and is therefore a core proceeding under 28 U.S.C. § 157(b)(2)(A). It seeks to determine the eligibility of a debtor for relief under the Code and thus "stems from the bankruptcy itself," and may constitutionally be decided by a bankruptcy judge. *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

### PROCEDURAL HISTORY AND FACTS ADMITTED BY THE DEBTOR

Debtor filed the instant bankruptcy petition on March 13, 2015.[2] Her original Schedule F (Dkt. 1.) listed $404,888.22 of unsecured debt. Among the debts listed on Debtor's original schedules, was a debt to the Federal Deposit Insurance Corporation ("FDIC") for a "[p]otential claim from closure of New Century Bank." The amount was listed as "unknown." The debt was also labeled as both disputed and unliquidated, but not contingent.

On April 23, 2015, the Trustee moved to dismiss the Debtor for ineligibility for being over the debt limit (Dkt. 24). In response, Debtor amended Schedule F twice - first on May 19, 2015 (Dkt. 26) and then again on August 11, 2015 (Dkt. 74). The final Amended Schedule F located at docket number 74, listed a total unsecured debt of

---

[2] This is Debtor's fourth bankruptcy filing in approximately a three-year period. Debtor's first bankruptcy petition was filed under chapter 13 on October 4, 2012 and was dismissed on December 3, 2012 for failure to file a credit-counseling certificate. 12-BK-39584. Debtor then filed for relief under chapter 11 on January 15, 2013. 13-BK-01419. This case was dismissed on April 21, 2013 for failure to file monthly operating reports. Following the dismissal of the chapter 11 case, Debtor again filed for relief under chapter 13 on July 22, 2013. 13-BK-29200. This case was dismissed on November 5, 2014 and terminated on March 10, 2015 for failure to make plan payments. Following closure of that chapter 13 case, Debtor filed the instant petition under chapter 13 on March 13, 2015.

2

$291,561.11.[3] On September 9, 2015, the Trustee filed an Amended Motion to Dismiss (Dkt. 84) and on September 30, 2015, the prior Motion to Dismiss filed at docket number 24 was withdrawn (Dkt. 86). The Debtor filed a response to the Amended Motion to Dismiss on September 28, 2015 (Dkt. 85). The Trustee declined to file a reply. The bar date to file a proof of claim was set for July 8, 2015, and no proof of claim was filed on behalf of FDIC.

FDIC initiated litigation against the Debtor and others on March 26, 2013 in the District Court for the Northern District of Illinois, 13-c-2246 ("FDIC Litigation"). The complaint ("Complaint") alleges negligence, breach of fiduciary duty and gross negligence in relation to certain loans issued by the now defunct New Century Bank ("NCB"). The FDIC Litigation seeks to recover $33 million in losses suffered by the Debtor and five other defendants for disregarding bank loan policy, prudent lending practices and regulatory warnings in connection with numerous commercial real estate and other loans. The Debtor was the founder, president, chief executive officer and director of NCB from 1999 until the Bank closed on April 23, 2010. *Complaint*, para. 5.

The FDIC Litigation is currently in the discovery stage, although no trial date has been set. In the Complaint, FDIC states that it believes that the damages are "in excess of $33 million." The Trustee, in his Amended Motion to Dismiss, refers to the $33 million as being above the statutory debt limit, and therefore requests that this case be dismissed for ineligibility. The Debtor responded that the FDIC debt is contingent and unliquidated and therefore, the debtor is eligible for chapter 13.

### ELIGIBILITY TO FILE CHAPTER 13 BANKRUPTCY UNDER § 109(e)

Section 109(e) of the Bankruptcy Code provides that a debtor is not eligible to file a Chapter 13 case if, on the date of the petition, that individual's noncontingent,

---

[3] Debtor also amended her Schedule E on May 19, 2015 (Dkt. 26.) and listed $15,785.48 of unsecured priority debt.

3

liquidated, unsecured debt exceeds $383,175.[4] The term "debt" is defined in the Bankruptcy Code as "liability on a claim." 11 U.S.C.S. § 101(12). A "claim" is defined, in part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C.S. § 101(5).

Eligibility under 109(e) "is based upon debts as of the petition date and not upon post-petition events such as allowed claims, filed claims, or treatment of claims in a confirmed Chapter 13 plan." *In re Rios*, 476 B.R. 685, 688 (Bankr. D. Mass. 2012). A bankruptcy court may also look beyond the schedules to other evidence submitted—including proofs of claim—when a good faith objection to the debtor's eligibility under § 109(e) is raised. *See Soderlund v. Cohen (In re Soderlund)*, 236 B.R. 271, 273 (9th Cir. B.A.P. 1999). In this case, no proof of claim was filed on behalf of the FDIC.

The burden of establishing eligibility under Section 109(e) lies with the party filing bankruptcy. *See Singer Asset Fin. Co., LLC v. Mullins (In re Mullins)*, 360 B.R. 493, 498 (Bankr. W.D. Va. 2007). However, "[m]erely because a debtor disputes a debt, or has defenses or counterclaims, that does not render that debt contingent or unliquidated." *In re Albano*, 55 B.R. 363, 368 (Bankr. N.D. Ill. 1985); *see also In re Matter of Knight*, 55 F.3d 231, 234 (7th Cir. 1995).

### CONTINGENT

"A noncontingent claim is a debt for which all of the events giving rise to liability have occurred prior to the debtor's filing a petition for bankruptcy." *In re Waller*, 2001 U.S. Dist. LEXIS 2057, *5, 2001 WL 197844 (N.D. Ill. Feb. 26, 2001). Thus, a creditor's claim is not contingent when the "triggering event" occurred before the filing of the chapter 13 petition. *In re Flaherty*, 10 B.R. 118 (Bankr. N.D. Ill. 1981) (claim against debtor-guarantor is not contingent when principal defaulted before filing of petition);

---

[4] This figure is updated periodically. Most recently, the unsecured debt limit increased from $360,745 to the current $383,175, effective April 1, 2013.

4

*see also Gaertner v. McGarry (In re McGarry)*, 230 B.R. 272 (Bankr. W.D. Pa. 1999) (Debtor-stockbroker's obligations on securities fraud claims asserted by investors were not "contingent," because all events giving rise to debtor's liability to investors occurred prepetition). For this same reason, tort claims are usually deemed noncontingent. *See In re Waller*, 2001 U.S. Dist. LEXIS 2057, *7 ("tort claims are usually noncontingent because all the events upon which the litigation is based already have occurred."); *see also In re McGovern*, 122 B.R. 712, 716 (Bankr. N.D. Ind. 1989). This standard does not require that a judgment in a civil suit occur prior to the filing of a petition in order for liability to attach to a debtor. *In re Knight*, 55 F.3d at 236.

In this case, all events giving rise to the three theories of liability contained in the FDIC litigation against the Debtor occurred prepetition. All of the subject loans were issued pre-bankruptcy, between April 2005 to July 2008. The FDIC Litigation commenced on March 26, 2013. In fact, Century Bank had been defunct for almost five years before the filing of the instant bankruptcy petition. Since all of the events giving rise to liability occurred prepetition, Debtor's debt to FDIC is not contingent.

### LIQUIDATED

In this case, the more difficult question is whether the Debtor's obligations are liquidated. The term "liquidated" generally refers to a claim's value and the ease with which that value can be ascertained. *See In re Knight*, 55 F.3d at 235; *see also Mazzeo v. United States*, 131 F.3d 295, 304 (2nd Cir. 1997). A claim is readily ascertainable "where the claim is determinable by reference to an agreement or by a simple computation." 2-109 Collier on Bankruptcy P 109.06[2][c] (16th ed.); *see, e.g., Barcal v. Laughlin (In re Barcal)*, 213 B.R. 1008, 1014 (8th Cir. BAP 1997) ("[t]he key factor in distinguishing liquidated from unliquidated claims is whether the process for determining the claim is fixed, certain, or otherwise determined by a specific standard."). On the other hand, if the value of the claim depends upon extensive hearings or the future discretion of a trier of fact, it is likely that the value will not be easily ascertained and is thus

5

unliquidated. *See In re Sugg*, 2014 Bankr. LEXIS 3134, *5, 2014 WL 3671421 (Bankr. D. Or. July 22, 2014) (finding that a claim for breach of fiduciary duty against the debtors was not readily determinable absent an extensive hearing or trial and was therefore not liquidated); *see also In re Ho*, 274 B.R. 867, 873 (9th Cir. BAP 2002) (finding that the nature of the dispute required an extensive hearing to determine the value of claim); *see also United States v. Verdunn (In re Verdunn)*, 89 F.3d 799, 802 (11th Cir. 1996).

In considering eligibility, it is appropriate for a court to rely primarily upon a debtor's schedules and proofs of claim, if these documents were not shown to have been filed in bad faith. *Barcal*, 213 B.R. at 1015. In this case, the Debtor listed the value of the debt as "unknown." No proof of claim was filed on behalf of the FDIC. Furthermore, neither party has adduced any evidence indicating that the formula for damages in this case is easily calculable. Indeed, the damages in this case may be quite complicated, as reflected in the Complaint attached to the Trustee's Amended Motion.

The damages asserted in the FDIC Litigation are being litigated based on three alternative theories of liability – negligence, gross negligence and fiduciary duty. "Whether or not the amount of a claim is capable of ready ascertainment turns on the nature of the claim. It is relevant, although not necessarily controlling, whether the asserted claim is grounded in contract or in tort." *In re Salazar*, 348 B.R. 559, 568 (Bankr. D. Colo. 2006). "[C]ontract debts, even though disputed, are considered liquidated and tort claims are not." *In re Robertson*, 143 B.R. 76, 79 (Bankr. N.D. Tex. 1992). "[T]he nature of damages commonly awarded in negligence or intentional tort cases is such that, more often than not, the amount of damages awarded resides with the discretion of a finder of fact." *In re Salazar*, 348 B.R. at 569. Similar to tort claims, some courts have found that debts based on an alleged breach of fiduciary duty are not readily determinable because the value of damages is subject to future exercise of discretion by the trier of fact. *See, e.g., Kanke v. Adams (In re Adams)*, 373 B.R. 116, 122 (B.A.P. 10th Cir. 2007) (finding that the part of creditor's claim attributable to a breach of fiduciary duty

6

was properly excluded from a calculation of debtor's debts for eligibility purposes). These general propositions are not without exceptions. The rule remains that when the claim, even a tort or breach of fiduciary duty claim, "can easily be determined" it is liquidated. *See, eg., In re Waller*, 2001 U.S. Dist. LEXIS 2057, *6.

In the FDIC Litigation, the FDIC alleges that the total damages are "believed to be in excess of $33 million." The damages are for fourteen loans that NCB made. The Complaint discusses Debtor's role for some, but not all of the loans. For example, when describing the Lincolnwood Town Plaza I loan, the Complaint alleges that "Pantazelos [Debtor] ignored regulatory warnings by loaning additional funds when the borrower failed to raise the required equity." *Complaint*, para. 95(d). The damages for this are loan estimated at $6.4 million. No connection is drawn by the plaintiff regarding what portion of that $6.4 million is attributed to the Debtor, or what portion may be attributable to the four other defendants identified as responsible for that transaction. To emphasize this point, when reviewing the Complaint's allegations regarding another one of the loans, the Madison Racine loan for example, the damages are estimated as $1.3 million. *See Complaint*, para 76-81. However, for this loan, the Debtor's role is not individually described. The Complaint describes the events that transcribed and alleges that the Debtor along with three other defendants are liable. How is this Bankruptcy Court to review fourteen different loans, all with different facts and changing parties, and decipher what value to ascribe to Debtor's role in each loan?

The Complaint identifies the value of the loans issued, but the damages for each loan transaction do not match that value. For example, the GCC Merrillville Venture loan was issued as a $10.2 million revolving line of credit, but the damages incurred are listed as $3.1 million. *Complaint*, para. 69-75. There is no formula identified in the Complaint for how the damages were calculated, just a total given. Thus, it is unclear from the Complaint how the damages are assessed, or in other words, it is not clear that the damages were derived by "reference to an agreement or by a simple computation."

7

2-109 Collier on Bankruptcy P 109.06[2][c] (16th ed.). By the FDIC's own admission throughout the Complaint, the damages pled are estimated and must be "determined at a trial." *Complaint*, para. 116, 121 and 128. Moreover, this Court cannot look to testimony from litigation to ascertain the value of the debt, because there has been none yet. Indeed, the value of the debt in this case cannot be readily determined absent an extensive hearing or trial to determine the extent or value of Debtor's liability.

## CONCLUSION

For the foregoing reasons, Debtor's disputed scheduled debts are in fact not contingent but are unliquidated. As a result, Debtor's unsecured debt is not above the debt limit under 11 U.S.C. § 109(e), and she is eligible for relief under Chapter 13. Accordingly, the Trustee's Motion to Dismiss will be denied by separate order.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated: Oct 29, 2015

OCT 29 2015

15 B 08916
In re: Faye T. Pantazelos

# CERTIFICATE OF SERVICE

I, Dorothy Clay, certify that on **OCT 2 9 2015**, I caused to be served copies of the foregoing document to the following by electronic service through the Court's CM/ECF system or regular U.S. mail:

_____
Judicial Assistant/Deputy Clerk

### Electronic Service through CM/ECF System

Patrick S Layng
Office of the U.S. Trustee, Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604

David P Lloyd
David P. Lloyd, Ltd.
615B S. LaGrange Rd.
LaGrange, IL 60525
Counsel for Debtor

Tom Vaughn
55 E. Monroe Street, Suite 3850
Chicago, IL 60603
Chapter 13 Trustee

### VIA FIRST CLASS MAIL

Faye T. Pantazelos
1110 N. Lake Shore Dr.
Unit 16 North
Chicago, IL 60611
Debtor(s)