# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | A CHAPTER 13 PROCEEDING |
| Faye T. Pantazelos, | Chapter 13 Case No. 15-08916 |
| Debtor. | Judge: Honorable Jack B. Schmetterer |
| | Trustee: Tom Vaughn |

## OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

NOW COMES J. Kevin Benjamin ("JKB"), an individual, by and through his attorneys, Benjamin | Brand | LLP, and hereby moves this Honorable Court for the entry of an order denying confirmation of the Debtors plan filed November 17, 2015 (Doc. 92) and in support thereof respectfully states to the Court as follows:

### I.   Jurisdiction

1. Debtor filed a petition for relief under chapter 13 of the bankruptcy code on March 13, 2015.

2. This court has jurisdiction pursuant to 28 U.S.C. §1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

### II.   Standing

3. JKB is a defendant in Adversary case number 15-00314 (Recovery of money / property - 547 preference) filed by Plaintiff and debtor Faye Pantazelos on May 12, 2015 (Doc. 25).

4. 11 U.S.C § 501(d), related to filing of proofs of claims or interests, states: "(d) A claim of a kind specified in section 502(e)(2), 502(f), 502(g), 502(h) or 502(i) of this title may be filed under subsection (a), (b), or (c) of this section the same as if such claim were a claim against the debtor and had arisen before the date of the filing of the petition."

5. 11 U.S.C § 502(h), related to allowance or claims or interests, states: "(h) A claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or is allowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

6. Thus if a preference transfer is avoided, by agreement or otherwise, JKB would have the right to file a proof of claim as to the amount of the avoided claim, even if the time for filing claims has expired. 11 U.S.C § 502(h).

7. Though the debtor never scheduled JKB as a creditor and no proof of claim has been filed, the fact that the debtor filed an adversary complaint alleging a preferential transfer, despite JKB's denials, makes JKB a party in interest to the underlined chapter 13 proceeding, Chapter 13 Case No. 15-08916.

8. A creditor who has not filed a proof of claim may still have standing to object to a debtor's plan on grounds other than sufficiency of distribution under section 1325(b). In reJensen, 369 B.R. 210 (Bankr. E.D. Pa. 2007).

9. Pursuant to Fed. R. Bankr. P 3015(f) related to objections to confirmation it states: "An objection to confirmation of a plan shall be filed and served on the debtor, the trustee, and any other entity designated by the court, and shall be transmitted to the United States trustee, before confirmation of the plan.

10. Confirmation of the Plan is set for November 18, 2015 at 11:00 am and the

debtor filed their plan just before 6:00 pm on November 17, 2015 on short notice and thus this objection is on short notice but all parties should be present on November 18th.

**The Plan does not comply with § 1325. Confirmation of plan**

11.     If a plan meets the requirements of § 1325 it shall be confirmed. Petro v. Mishler, 276 F.3d 375 (7th Cir. 2002) (plan must be confirmed if standards of section 1325(a) met and court may not set additional requirements).

12.     If a Plan does not meet those requirements it should not be confirmed. See also In re Escobedo, 28 F.3d 34 (7th Cir. 1994) (distinguishing section 1322(a), which does set mandatory requirements); In re Brady, 86 B.R. 166 (Bankr. D. Minn. 1988). But see In reJones, 530 F.3d 1284 (10th Cir. 2008) (conditions set forth in section 1325(a) are required for confirmation if creditor or trustee objects to plan).

13.     In addition to this objection to the plan there is currently an objection to the Plan pending and filed by 1110 Lake Shore Drive Condominium Association (Doc. 29) as well as Ocwen Loan Servicing for US Bank National Association, (Doc. 55).

**Basis for Objection under § 1325(3), § 1325(4), & § 1325(7)**

14.     Under § 1325(3) the plan must have been proposed in good faith and not by any means forbidden by law; § 1325(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date; (7) the action of the debtor in filing the petition was in good faith.

15.     The debtor here has not proposed the plan in good faith and as shown below the action of the debtor in filing the petition was in bad faith and in fact fraudulent in many

respects and the debtor has never filed a liquidation analysis or shown the condo is listed, shown any valuation for it and more specifically filed fraudulent schedules, schedule B in particular and is not disclosing all her assets.

16. The debtor did not review and sign the petition and schedules and other documents. The petition was filed on March 13, 2015 and dated March 13, 2015 but the signature pages are dated March 12, 2015. In particular the declaration of schedules says there are ZERO pages attached to the filing (and it was not a short filing). The declaration that was filed with debtors electronic signature was dated March 13, 2015 and stated there were 26 pages to the schedules.

17. The signed SOFA dated March 12, 2015 is merely a blank signing page where the SOFA filed March 13, 2015 and electronically signed has question number 25 on the signing page as well. Its not just a blank signed page on the electronic filing.

18. The verification of the creditors matrix that was signed on March 12, 2015 indicated 47 creditors but the March 13, 2015 filing signed electronically had 45 creditors.

### BAD FAITH IN THE PREPARATION AND FILING OF SCHEDULE A

19. Debtor made false representations when filing the petition for relief. Schedule A listed a condo as stated: *1110 N. Lake Shore Drive, Unit 16 North, Chicago IL 60611 - Debtor's interest uncertain--may be limited to right of redemption."* This is amazing as the debtor had actually redeemed it, after an order signed by Judge Schmetterer in December of 2013 allowing her to obtain a loan, debtor redeemed the property, though US Bank maintained a first lien in the amount of $362,178.78 in REM 1st lien on the property.

20. In debtors prior chapter 13 schedule A stated: *"Special right of redemption exercised post petition on or about November 23, 2013 for $562,705.07 with a private loan*

4

*obtained by Debtor (approved by the Court) that may have a lien on the property in excess of the $550,000 certified appraisal obtained post filing on or about November 14, 2014 in relation to his property. The loan for the redemption granted the Debtor a 50% interest in the property."*

21.    So when debtor claimed "may not" have an interest she was acting in bad faith.    In    fact    the    property    is    in    a    trust    as    shown    below:

>   THIS AGREEMENT, entered into on November 18, 2013 between the Faye Pantazelos ("Faye") and BCS Services, Inc. ("BCS"), (collectively, "the Parties") each a beneficiary of Chicago Land Trust Company Trust Number 8002363431 dated November 18, 2013 ("Land Trust"); and

22.    The loan came due in January of 2015 but nothing in the schedules or other documents explains how it was paid off or when?  If not paid off then was it refinanced? What terms?  Where is that document and disclosure?

23.    Debtor did not disclose the trust and she did not disclose her 50% interest or what had happened to it?  If its transferred how can it be funding the plan that they filed?

24.    In fact debtors's schedule A, filed March 13, 2015, claims an ownership interest in a condominium with a value of $850,000.00 and a secured lien in the amount of $586,853.19, leaving equity in the amount of $263,146.81.  But her interest is only believed to be 50%, and in fact that secured lien of $586,853.00 was filed in this underlined chapter 13 for a SECURED claim of $666,719.64 in which debtor has not objected.  Thus the 50% interest in the alleged $263,146.81 (before commissions and closing costs) now becomes 50% of $183,280.36 or $91,640.00.  BUT the claims of BCS Services for $666,719.64 is really a 2nd lien with the first lien belonging to US Bank for $362,178.78 so the secured debt is $1,0288,898.40 so there is ZERO equity and actually –($178,898.40) of NEGATIVE EQUITY.

5

**BAD FAITH IN THE PREPARATION AND FILING OF SCHEDULE B**

25. Debtor claims the condo she lives in (she paid almost a million dollars for it) only has a around $4,000 in furniture and household furnishings; $15,000 in fine art and $9,000 in jewelry.

26. The debtor filed schedule B on or about March 13, 2015 and listed **$47,900.00** in claimed assets. The debtors schedule B listed furniture and household goods in the **amount of $4,000.00** and books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles, fine art paintings, collectibles, persian rugs antique china in the **amount of $15,000.00** and furs and jewelry in the **amount of $9,000.00,** specifically stating the debtor owned 5 fur coats and jewelry, included in the total personal property listed of **$47,900.00.**

27. However, in debtors previous chapter 13 (case number 13-29200) debtor filed schedule B on or about August 13, 2013 and in her schedules debtor claimed furniture and household goods in the **amount of $10,000.00** and books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles, fine art paintings, collectibles, persian rugs antique china in the **amount of $55,000.00** and furs and jewelry in the **amount of $120,000.00,** specifically stating the debtor owned 5 fur coats and jewelry, included in the total personal property listed of **$154,160.00.** Moreover the debtor stated she had a personal property insurance policy with Travelers Insurance for **$120,000.00**, which was itemized as **$40,000.00** for the furs and **$80,000.00** for the debtor's jewelry.

28. Mysteriously in both the current underlying chapter 13 and the previous chapter 13 of the debtor, she claims 5 furs and jewelry yet somehow the furs and jewelry

that were insured for a value of **$120,000.00**, somehow were only worth **$9,000.00**, and of course there is no mention from the debtor of the personal property insurance policy or how the fur coats and jewelry suddenly lost so much value so quickly?  Nor is there any indication of any jewelry was sold, and if so for how much and where did the money go?

29.    If that is not bad enough the debtor prepared and had sent to the Internal Revenue Service a declaration of insolvency that was prepared on October 14, 2013 by her accountants at Pavlatos & Louizos, Ltd., a copy of which is attached as **Exhibit A, attached hereto and made apart hereof,** that stated her personal property (art, jewelry, etc) was worth **$194,430.00**!   The debtor claimed she had assets at that time of $**201,440.00!** Somehow the debtor "forgot" she has an interest in real estate of what may now be as high as $**919,000.00**, which would make her assets over **$1,120,440.00**!

30.    She claimed she owed attorney fees at the time of $14,546.00, $160,532.00 in credit card debt (that is not schedules on her current schedules nor have any proof of claims been filed anywhere near that amount for credit cards where only around $27,000 of credit card related proof of claims have been filed), and $887,000.00 in notes payable.  In relation to the notes payable the debtor filed a response to the original chapter 13 trustee motion to dismiss for being over the debt limits (filed May 19, 2015 in the current chapter 13) and explained that the many notes payable were really not notes payable as they were really gifts and that it was just a mistake to have filed those and that she does not owe those debts.

31.    On information and belief (debtor has previously indicated to JKB that the insolvency statement had been filed on her behalf with the IRS because her accountant told her she would not have to pay certain IRS tax obligations if she was insolvent at that time). Thus it appears the debtor prepared a false insolvency statement with the IRS intentionally

7

omitting any real estate interests and equity (which she claims in her current chapter 13), grossly overstated "notes payable", so that liabilities would appear to be more then assets (which were not fully disclosed either) executed it, and fraudulently claimed insolvency to the IRS for the year 2014. The Chapter 13 trustee should be in possession of the 2014 tax returns, which may indicate if she in fact committed fraud on the IRS and the US Bankruptcy Court.

32.  She has assets of as much as **$1,120,440.00**, if not more, and her originally filed schedule D claimed secured debt of $586,853.00, schedule E, as amended, claims $15,789.48, and schedule F, as amended, claims $320,000.40 for a total debt claimed by plaintiff/debtor's schedules of around $922,642.88 which would make **her assets exceed her liabilities buy almost $200,000! This should be converted to a chapter 7.**

33.  There is no way to know for sure as the debtor keeps filing different amounts of assets and liabilities to the extent it serves her purposes with the IRS, tax breaks, or the US Bankruptcy Court, or to prevent the Chapter 13 trustee from having her case dismissed or converted to chapter 11, so there is no way to really know with such a dishonest plaintiff.

**BAD FAITH IN THE PREPARATION AND FILING OF SOFA**

34.  Debtor has a Current pending case in US District Court – FDIC v. Pantazelos, et al The FDIC seeks over $30 MILLION from the debtor. She did not list it as a creditor. Debtor did not list it on her SOFA as a current pending case until recently after we stated to his honor of this fact in open court. Debtor also did not list the FDIC and Department of Professional Regulation who intervened in that case.

35.  Debtor was also involved in an APPEAL of the underlying 2011 CH 18063 and she did not list the appeal in her SOFA as a pending case as shown:

Case Information Summary for Case Number

2011-CH-18063

| Activity Date: 2/5/2015 | Participant: US BANK NATION L ASSOCIAT |
|---|---|

DEFAULT - DENIED -

| Court Room: 2806 | Judge: SIMKO DARRYL B. |
|---|---|

| Activity Date: 3/5/2015 | Participant: PANTAZELOS FAYE |
|---|---|

REQUEST FOR PREPARATION OF RECORD

Attorney: BROWN UDELL & PETERS LTD

| Activity Date: 3/5/2015 | Participant: PANTAZELOS FAYE |
|---|---|

NOTICE OF APPEAL FILED

Attorney: BROWN UDELL & PETERS LTD

| Activity Date: 5/4/2015 | Participant: PANTAZELOS FAYE |
|---|---|

RECORD ON APPEAL

Attorney: BROWN UDELL & PETERS LTD

| Activity Date: 5/11/2015 | Participant: PANTAZELOS FAYE |
|---|---|

PLACITA AND CERTIFICATION OF TRANSCRIPT OF RECORD FOR APPEAL FILED

Attorney: BROWN UDELL & PETERS LTD

36.    On November 3, 2015 debtor filed a motion to approve the settlement and filed documentation but according to Pacer as of November 5, 2015 the settlement is not finalized.

MINUTE entry before the Honorable Andrea R. Wood: The parties electronically informed the Court informed that they require additional time to finalize the settlement documents. The status hearing set for 11/6/2015 is stricken and reset for 12/4/2015 at 9:00 AM. If the parties file a stipulation to dismiss prior to the next status hearing, the status date will be stricken and the parties will not need to appear. Mailed notice (ef, ) (Entered: 11/05/2015)

37.    Debtor was a defendant in an adversary proceeding 14-ap-00175 filed

3/11/2014 and that was dismissed when her underlying previous chapter 13 was dismissed on 11/5/2015 yet the debtor never disclosed that on her SOFA. In fact the plaintiff was BCS Services with whom she appears to own or have owned 50% of the Condo that she claims she is selling.

### PLAN IS NOT FEASIBLE

38.  §1325(a)(6) requires that "the debtor will be able to make all payments under the plan and to comply with the plan." If the plan does not meet this standard, sometimes called the "feasibility" test, confirmation may be denied. Thus, the schedules' property and budget figures must show sufficient income or other financial resources to enable the debtor to make the payments proposed. If the debtor does not present such evidence as is necessary to convince the court that payments can be made, the plan may be found not feasible. In re Epps, 6 Bankr. Ct. Dec. (LRP) 379, 2 Collier Bankr. Cas. 2d (MB) 97 (Bankr. S.D.N.Y. 1980); In re Nance, 4 B.R. 50 (Bankr. W.D. Mo. 1980).

39.  Similarly, if the plan calls for a very large lump sum payment at the end of the plan, with no reasonable explanation of how the debtor will fund it, the plan will be found not to meet the feasibility test. In re Fantasia, 211 B.R. 420 (B.A.P. 1st Cir. 1997) (plan not feasible when debtors offered no evidence to show they could carry out intent of making large balloon payment by refinancing a parcel of property); In re Gavia, 24 B.R. 573 (B.A.P. 9th Cir. 1982) (plan based upon sale of residence, which was not likely, denied confirmation); In re Seem, 92 B.R. 134 (Bankr. E.D. Pa. 1988) (plan to sell real estate at end of plan period was too speculative to meet test); In reSchenck, 67 B.R. 137 (Bankr. D. Mont. 1986). However, a balloon payment at the end of a plan is not always found infeasible. See In reRamirez, 2014 WL 1466212 (Bankr. S.D. Fla. Apr. 4, 2014) (plan with balloon payment was feasible when debtor would pay half of home's value through plan); In

re Gregory, 143 B.R. 424 (Bankr. E.D. Tex. 1992) (plan with large balloon payment at end based on proposed sale of debtors' home was not too speculative); In re Groff, 131 B.R. 703 (Bankr. E.D. Wis. 1991) (balloon payment on mortgage at end of plan permitted).

40.   In this case the debtor is only paying $100 per month and says she will fund her plan by selling her condo, which will then pay lump sum of $200,000.  However the debtor only owns 50% of the condo which has negative equity, as described above, the claims of BCS Services for $666,719.64 is really a 2nd lien with the first lien belonging to US Bank for $362,178.78 so the secured debt is $1,0288,898.40 so there is ZERO equity and actually –($178,898.40) of NEGATIVE EQUITY.  So there is no way the plan is feasible.

**Debtor committed perjury before this court on April 13, 2015**

41.   The court extended the automatic stay on April 13, 2015 when the debtor appeared and testified in person on April 13, 2015.  A copy of the court transcript is attached as **Exhibit B** and made apart of this objection.

42.   On page 9 line 14 the debtor tells the court the property will be up for sale the following month. On page 9 line 18 the debtors says she will NET $200K.  On page 9 line 25 the debtor says she only has 1 mortgage and that is for $576K.  On page 10 line 3 the debtor says the property will be up for sale May 1, 2015.  On page 10 line 4 the court asks the debtor if she has an appraisal and on line 6 and 7 she says not really but claims they have some comparables.

43.   In fact the property was not up for sale on May 1st.  In fact 2 or 3 times over the summer debtors counsel represented to the Court that the property was on the market.  In fact JKB is a licensed realtor and had his brokerage house check the MLS and at least towards the end of the summer the condo was NOT listed on the MLS. Debtor has never

provided any evidence of a listing to this day.  Nor has the debtor filed a liquidation analysis to justify the claims made in the plan.

44.  Yet the debtor, without an appraisal tells the court what she will net and debtors counsel files a plan claiming to net $200K.  She also did not tell the Court she only owned 50%.

45.  When the debtor told the Court she only had one lien she lied to the court.  In fact the $576K lien by BCS is really $667K and it's a SECOND lien as the first lien is for $362K from US Bank.  Debtor knew of the lien as she lost in state court and appealed that ruling days before filing her chapter 13 in bad faith, and of course she did not disclose the appeal or ongoing case and she knew she owed $362K in first position at that time and in fact there was an adversary proceeding for that in the previous case that she did not disclose to the Court or on her schedules and documents she filed under penalty of perjury.

46.  In addition attached hereto is **Exhibit C** and made apart of this objection that is an older appraisal for $550K in November of 2013.  Further attached **Exhibit D** and made apart of this objection is the a recent BPO showing a value of $720K in June of 2015.

47.  Attached hereto as **Exhibit E** and made apart of this objection is a mortgage lien search report showing a lis pendens of $744K by US Bank followed by the original $562K loan from BCS services (now in land trust) and the federal tax lien of $21K and this was before the condo association recorded their $24K claim.

48.  Debtor transferred the property into a land trust with BCS Services around the time of the filing and did NOT disclose the transfer, nor did debtor disclose that she has an arrangement with BCS to not only pay BCS in full (the now $667K claim) but also pay BCS 50% of any profit.

49.  Thus there also appears to be some executory contracts or other agreements still not disclosed on the debtors schedules and debtor did not disclose the financial arrangement even though there appears to be no equity at all.

50. Yet debtor filed a plan, just hours ago, still claiming to pay $200K in a year from the sale of the home that is still not on the market to anyone's knowledge despite her testimony under oath to the contrary.

51. Debtors plan says it will pay all liens on the property but the liens all total over a million dollars and the only value that has been shown is the $720K BPO from a few months ago attached hereto which is also $130K less then the debtor listed on schedule A.

52. Debtor also says they will turnover non exempt proceeds from any recovery as is necessary to pay unsecured creditors in full while at the same time filing a 10% plan which makes no sense.

53. The only thing that is obvious is the plan is not feasible as there is no equity in the condo and the debtor has lied to the court and also filed false and misleading petitions and schedules and other documents, thus the chapter 13 was not filed in good faith or for any proper purpose and confirmation of the plan should be denied.

WHEREFORE, Movant respectfully requests that this Honorable Court enter an order denying confirmation of the November 17, 2015 plan filed by debtor, and such other and further relief as the nature of this case may require as is just.

Dated this 18th Day of November, 2015

Respectfully submitted,

J. Kevin Benjamin

By: /s/ J. Kevin Benjamin
Attorney for J. Kevin Benjamin

J. Kevin Benjamin, Esq.
Benjamin | Brand | LLP
1016 West Jackson Blvd.
Chicago, Illinois 60607-2914
Phone: (312) 853-3100
ARDC #: 6202321

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | **A CHAPTER 13 PROCEEDING** |
| Faye T. Pantazelos, | Chapter 13 Case No. 15-08916 |
| Debtor. | |
| | Judge: Honorable Jack B. Schmetterer |
| | Trustee: Tom Vaughn |

**CERTIFICATE OF SERVICE**

I, the undersigned, an attorney, certify and state pursuant to Local Rule 9013-3(d) that the attached objection to the confirmation of the plan filed on the 18th day of November, 2015, and served on all Parties identified as Registrants, on the date this notice was filed electronically with the Clerk of the U.S. Bankruptcy Court, through the Court's Electronic Notice of Registrants.

Dated this 18th Day of November, 2015

Respectfully submitted,

J. Kevin Benjamin

By: /s/ J. Kevin Benjamin
Attorney for J. Kevin Benjamin

J. Kevin Benjamin, Esq.
Benjamin | Brand | LLP
1016 West Jackson Blvd.
Chicago, Illinois 60607-2914
Phone: (312) 853-3100
ARDC #: 6202321